## [No. 2043.]

### Ike Phillips v. The State.

1. **Theft — Evidence — Case Stated.** — A State's witness in a theft case was asked on his examination in chief about the character and condition of the brand on the alleged stolen animals when he purchased the same from the defendant. He answered describing the brand, and stated that when he purchased the animals he asked the defendant "What fool had put such a brand on the animals?" At this juncture the district attorney stopped the witness. On cross-examination the defense asked what answer defendant made to the question. The State's objection that it had not attempted to prove any conversation between the witness and the defendant at the said time was sustained, and the jury was instructed to disregard what witness had said about his having asked the defendant about the brand. The defendant's bill of exceptions states that his purpose was to prove by the witness that, in response to his question, he told witness that he purchased the animals from one C., who was driving them from East Texas. *Held*, that the action of the court was erroneous, because the testimony was not only legitimate upon cross-examination, but was competent as original evidence under the rule that declarations of the defendant, when part of the *res gestæ*, are admissible in his behalf; and also under the rule that if a party found in possession of property recently stolen makes an explanation of his possession when it is first directly or circumstantially challenged, he is entitled to prove what he said in explanation.

2. **Same — Impeaching and Sustaining Testimony.** — One of the witnesses introduced by the defense was shown to be a stranger in the county of the prosecution. He testified that he was a subscribing witness to the bill of sale of the animals, executed by C., who sold them to the defendant (which bill of sale was in evidence), and that as such subscribing witness he proved the same before a justice of the peace of W. county. The State, on cross-

examination, propounded many questions, tending indirectly to throw dis-
credit upon his testimony. The defense then tendered witnesses who had
long known the impugned witness, to prove that his reputation for truth
and veracity was good where he resided and was known. This sustaining
evidence was rejected by the trial court upon the ground that the witness's
character had not been impeached. *Held,* error; because the witness being
a stranger, and testifying to isolated facts, and the cross-examination tend-
ing strongly to discredit his statements, sustaining testimony was competent
under the rule that "such evidence may be admitted on particular discredit-
ing facts being developed against the witness in his cross-examination,
especially when he is in the situation of a stranger testifying to isolated
facts." See the statement of the case for a state of proof to which the rule
applies.

3. PRACTICE — CHARGE OF THE COURT.— The defense in a criminal trial is not
required to announce exceptions to the charge of the court, or to the action
of the court refusing a special charge, before the jury has retired to con-
sider of their verdict, but may do so at any time after the retirement of the
jury and before the return of the verdict. Nor is it necessary that the re-
quest to note the exceptions should point out specifically the objections to
the charge, though essential that the bill of exceptions should do so; and it
is the duty of the court, upon request, to allow the defense time to formu-
late such a bill. See the opinion *in extenso* on the question.

4. SAME — THEFT.— The defense in a theft case relied upon a purchase as evi-
denced by a bill of sale. The court charged the jury as follows: "If you
believe from the evidence that defendants, or either of them, purchased the
said animals, and that such purchase was made in good faith, no matter
whether the cattle had been previously stolen or not, and that defendants
knew they were stolen property at the time they purchased them, yet they
are entitled to be acquitted of the offense charged in this case." *Held,* erro-
neous as incorrectly presenting the question of good faith, for, if defendant
did not participate in the original *taking* of the property, good or bad faith
had nothing to do with a subsequent purchase of the property by him. Note
in the opinion a suggestion of a state of facts which would authorize a
charge upon the *bona fides* of a bill of sale.

APPEAL from the District Court of Gonzales. Tried below be-
fore the Hon. George McCormick.

The indictment in this case was joint against the appellant and
one John Phillips. It charged them with the theft of five head of
cattle, the property of James W. Baker, in Gonzales county, Texas,
on the 1st day of January, 1882. The joint trial of the two defend-
ants resulted in the acquittal of John Phillips and the conviction of
the appellant, and the assessment against him of a term of two
years in the penitentiary.

James W. Baker testified, for the State, that he missed several of
his yearlings from their range in Gonzales county, in December,
1881. He found three of his yearlings in Tom Caffal's herd, which
Caffal and John Phillips were driving out of the county. Witness

knew his yearlings by their flesh marks as well as the brand O T T O, in which he branded them two or three months before. That brand on each animal had been changed by branding a C before and an R after it, making the brand C O T T O R. This change was fresh and recent. Tom Caffal, John Phillips and other parties were with the herd when witness overtook it, some five or six miles from witness's range. As he rode up to the herd, witness said to Caffal: "You have some of my yearlings in your herd." Caffal asked: "Which ones?" Witness pointed out the three yearlings designated. Caffal then called up John Phillips, and said to witness: "I bought these cattle from Ike Phillips, and John Phillips there signed the bill of sale." Witness replied that it made no difference; that the yearlings were his. Caffal then asked John Phillips what he should do about it. John Phillips made no reply. Caffal then said to John Phillips: "Well, then, as you have the money in your pocket I paid you for the cattle, you had better pay me the money back, and turn the cattle over to Phillips [Baker?]." Phillips said: "Well," paid the money back to Caffal, and he, Caffal and witness cut the yearlings out of the herd, and witness drove them home. Phillips made no explanation of how he came in possession of the animals. He merely returned the money to Caffal and the animals to the witness. Neither the defendant nor John Phillips lived in the witness's neighborhood, nor did he know where they lived. No such man as M. H. A. Cottor lived in Gonzales county that the witness ever heard of. The cattle described were taken from the range in Gonzales county, without the witness's consent. They were now in witness's possession. No legal proceedings against witness, for the possession of the same, had ever been instituted by any one.

Tom Caffal testified, for the State, that while in Gonzales county, in December, 1881, purchasing a herd of cattle, he bought three yearlings branded C O T T O R from the defendant. Witness did not have quite enough money left to pay for the cattle, and told defendant that he would have to send to Wrightsboro to cash a draft. Defendant turned the cattle over to witness and sent John Phillips with witness to help drive the herd, and to get the balance of the money, directing John Phillips, on the payment of the balance, to execute to witness a bill of sale. When witness got his money from Wrightsboro, he paid John Phillips, who executed the bill of sale for Ike Phillips. Witness was overtaken with his herd by J. W. Baker, who told him that he had two of his, Baker's, yearlings in his herd. Witness asked him to point them out. Baker pointed

out two of the animals in the brand described. Witness told him that there was another in that brand in the herd, and pointed it out to Baker. Baker claimed that also, saying that he knew them by their flesh marks. Witness told Baker that he had bought those yearlings from Ike Phillips; that John Phillips executed the bill of sale for Ike Phillips and received the purchase money; that John Phillips was present and the matter could be settled there and then. He thereupon called John Phillips and told him that Baker claimed the cattle. John made no explanation of how the cattle came into the possession of his brother, Ike Phillips. Witness then told John Phillips to repay him the purchase money, and let Baker take the yearlings. To this John Phillips agreed, and paid the money back to witness, and returned Baker the yearlings. The letters of the brand on the animals showed to be of different ages, some being fresher than others. Witness noticed this difference when he purchased, but asked no questions about it. Witness never heard of M. H. A. Cottor previous to his purchase of the cattle. Ike Phillips said nothing to witness about where he got the animals when he sold them to witness. Witness was indicted for the theft of these cattle, but the prosecution was dismissed, not for the purpose of using him as a State's witness, but because he showed his purchase.

The State next introduced in evidence the indictment against Caffal for the theft of the same animals, and the subpœnas, with return of service thereon, for J. C. Phillips, Jim Baker and Dunk McGee, as witnesses for the defense.

H. Alston was the first witness for the defense. He testified that he was traveling through Gonzales county in November, 1881, looking for a suitable piece of land to purchase and occupy. He went to the town of Gonzales to see Colonel Parker about purchasing part of the Buckhorn tract. Witness returned to the Buckhorn ranche and spent several days there with Buck Morris. While witness was at that ranche a man who called himself Cottor came there. He went off the same day but returned next morning with Ike Phillips, driving a bunch of yearlings branded C O T T O'R, which they penned at the Buckhorn ranche. Cottor and Ike Phillips, after penning the yearlings, got down from their horses at the yard fence. Buck Morris and witness joined them at the fence, when Cottor executed to Ike Phillips a bill of sale to the yearlings in the brand described, which bill of sale was signed by the witness and Buck Morris as witnesses, at the request of both Cottor and Ike Phillips. The bill of sale was written out at the fence, but the

witness did not know by which of the parties. He did not write it himself. Cottor left the ranche after this transaction. Witness had never seen him before and had never seen him since, and had no idea of his whereabouts or residence. He could not now describe his personal appearance, or remember whether he was an old or a young man, or a large or a small man. He could not describe the color of his eyes or hair, or the color or style of the clothes he wore, or color or size of the horse he rode. No one, save witness, Morris, Cottor and Phillips, was present when the bill of sale was executed. Witness, after this transaction, purchased land in Wilson county, near Stockdale, where he has since resided. In June, 1882, Buck Morris came to witness's house with the Cottor-Phillips bill of sale, and asked witness to go with him before a justice of the peace to prove it up. Witness went with Morris before 'Squire McGee, and he proved the bill of sale. Witness identified the bill of sale in evidence as the one about which he was testifying.

Justice of the Peace McGee, of Wilson county, testified, for the defense, that the bill of sale in evidence was proved before him on June 23, 1882, by a man named Buck Morris, who was introduced to him by H. Alston. The bill of sale, with its proof by Morris and the jurat of McGee, was read in evidence.

The matter referred to in the second head-note of this report relates to the proceedings upon the examination of the witness Alston. The transcript does not show where the examination in chief of the witness closed, or where the cross-examination began. It is evident, however, that the inability of the witness to give any manner of description of the man Cottor, whom, as he testified, he saw execute the bill of sale to Ike Phillips, was drawn out by the cross-examination. The bill of exceptions recites that, upon the cross-examination eliciting testimony tending to discredit the witness, the defense proposed to introduce citizens of Wilson county to testify that they had known the witness Alston for a series of years, and that he had, during that time, in Wilson county, sustained a good reputation for truth and veracity.

The motion for a new trial raised the· questions discussed in the opinion.

*Fly, Davidson & Davidson*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

White, Presiding Judge. Appellant and his brother, John Phillips, were jointly indicted and jointly tried for the theft of five head

of neat cattle, the property of James W. Baker. John Phillips was acquitted; appellant was convicted, and given two years in the penitentiary by way of punishment.

We will dispose of the bills of exception in the same order in which they are presented in the record, stating substantially only such facts as are necessary to an understanding of the points made.

1. When found by the owner after they had been stolen, the animals were in the possession and herd of one Caffal. Caffal was called as a witness for the State. He was asked, on his examination in chief, by the district attorney, about the character and condition of the brand as it appeared upon the animals when he purchased them. He stated that he had purchased them from appellant, and that the brand was C O T T O R across the ribs, and that when he first saw it he asked one of the defendants, " What d—d fool had put such a brand as that on the animal?" At this the district attorney stopped him, and nothing further was elicited upon the point. On cross-examination it was sought to prove by the witness what the defendant said to him at the time, in answer to this question of the witness. Objection was made by the prosecution upon the ground that the State had not attempted to prove any conversation between witness and defendant which took place at said time. The objection was sustained by the court, and the jury were instructed to disregard and not consider what the witness had previously said about his having asked the defendant about the brand. Defendant excepted to this action of the court, stating that he expected to prove by the witness that, in response to said question, defendant told the witness that he had bought the animals from one Cottor, who was driving the cattle from East Texas. This ruling of the court was erroneous. Defendant was not only entitled to the testimony on cross-examination, under the circumstances stated, but what he desired to prove by the witness would have been competent and admissible as original evidence under the rule that declarations made by a defendant, when part of the *res gestœ*, are admissible for the defense; and also under the other well settled rule that where a party is found in possession of property recently stolen, and an explanation of his possession is directly or circumstantially demanded, what he says in explanation is admissible in his behalf. (*Castello* v. *The State*, 15 Texas Ct. App., 551; *Taylor* v. *The State*, id., 356; *Roberts* v. *The State*, 17 Texas Ct. App., 82; *Anderson* v. *The State*, 11 Texas Ct. App., 576; *Lewis* v. *The State*, 17 Texas Ct. App., 140; *Heskew* v. *The State*, 17 Texas Ct. App., 172; *York* v. *The State*, 17 Texas Ct. App., 441.)

2. One Alston was introduced as a witness by defendant, and he testified that he was one of the subscribing witnesses to a bill of sale executed by Cottor to appellant for the animals in question, and that he, witness, had subsequent to its execution proven up said bill of sale before one McGee, a justice of the peace in Wilson county. This bill of sale was adduced in connection with witness's testimony. The district attorney asked the witness, on cross-examination, many questions tending indirectly to attack the character and to throw discredit on the testimony of the witness. The witness was a stranger in Gonzales county, and defendant proposed to introduce witnesses who had known the witness for years, to prove that his reputation for truth and veracity was good where he resided and was known. This was objected to by the State as inadmissible, on the ground that his reputation had not been attacked; and the objection was sustained and the evidence disallowed.

That a witness whose reputation for veracity has been directly assailed, or where his credit has been impeached by showing that he has made contradictory statements to his evidence given on the trial, may be sustained by proof of his general good character for truth and veracity is well settled in this State, and the doctrine announced by Mr. Greenleaf upon the subject adopted as the rule. (1 Greenl. Ev. (13th ed.), § 469; *Burrell* v. *The State*, 18 Texas, 713; *Dixon* v. *The State*, 15 Texas Ct. App., 271; *Coombes* v. *The State*, 17 Texas Ct. App., 258; *Thomas* v. *The State*, 18 Texas Ct. App., 214; *Johnson* v. *Brown*, 51 Texas, 65.) But in this instance the witness's character had not been impeached, nor were contradictory statements shown. It was, however, shown that he was a stranger, testifying to isolated facts, and the cross-examination to which he was subjected tended strongly to discredit his statements. Discussing the extent to which sustaining witnesses are allowed, Mr. Wharton says: "It is further held that such evidence may be admitted on particular discrediting facts being developed against the witness in his cross-examination, especially when he is in the situation of a stranger testifying to isolated facts." (Whart. Crim. Ev. (8th ed.), § 491.) Under this rule we are of opinion defendant should have been allowed to introduce the testimony of his sustaining witnesses.

3. After the charge had been delivered and handed to the jury with the other papers in the case, and the sheriff had been ordered to adjourn the court, as the judge rose to leave the bench defendant's attorneys asked the court to note the fact that they reserved exceptions to his charge, without pointing out the particular objectionable portions excepted to. The court remarked "you are too

late," and refused to allow a bill of exceptions to the charge, but signed a bill reserved to his ruling in refusing to allow the exception, and in connection therewith requests this court to prescribe a rule for the practice which should be observed in taking exceptions to the court's charge by the defendant.

Such a rule has been announced in *McCall* v. *The State*, 14 Texas Ct. App., 353. It is there said: "We do not think it is contemplated by the law (Code Crim. Proc., art. 686) that a defendant in a criminal trial, desiring to except to the charge of the court or to the action of the court in refusing a charge, should do so at the very time the charge is given or refused. To require him to do this would be placing before him the alternative of passively and silently submitting to what he conceives to be an error, or to take the risk of creating against himself a prejudice in the minds of the jury by expressing a dissatisfaction with the law as given them in charge by the court. We think a proper and usual practice is to allow the defendant to take his bills of exceptions to the charge of the court, and to the refusal of charges, after the jury has retired from the box." In civil practice charges given by the court are not, as in criminal cases, required to be excepted to specially, but are regarded as excepted to without the necessity of taking any bill of exceptions thereto. (Rev. Stats., art. 1318; 2 Cond. Repts. (Willson), § 135.) In criminal cases we are not aware that the exceptions to the charge required to be noted should point out and specify particularly the objectionable portion or portions excepted to, at the time of asking leave to reserve exceptions. This is scarcely practicable. To make specific objections in a majority of cases requires time and a thorough scanning of the language used in the charge. All that is required is that general exception be taken at the time, with a request for time to prepare a bill containing the specific objections, to be prepared before the verdict is returned in order that the court may have an opportunity to correct the charge, if so desired. We are of opinion the court erred in not allowing defendant's exceptions to the charge.

4. In appellant's assignment of errors and brief several supposed errors in the charge are pointed out specifically and complained of. We only notice the one deemed material by us. The defense was that defendant had purchased the cattle of one Cottor, and in support of this defense, amongst other things, a bill of sale from Cottor to defendant was adduced in evidence. Upon this defense the court instructed the jury, "if you believe from the evidence that defendants, or either of them, purchased the said animals, and that such

purchase was made in good faith, no matter whether the cattle had been previously stolen or not, and that defendants knew they were stolen property at the time they purchased them, yet they are entitled to be acquitted of the offense charged in this case." The use of the terms " that such purchase was made in good faith," it is claimed was erroneous and calculated to mislead.

If defendant did not participate in the original *taking* of the property, good faith or bad faith had nothing to do with a subsequent purchase of it by him. (*McAfee* v. *The State*, 14 Texas Ct. App., 668; *Clayton* v. *The State*, 15 Texas Ct. App., 348; *Prator* v. *The State*, 15 Texas Ct. App., 363.) But if the evidence shows or tends to show that, at the time of the original taking, defendant was conspiring, participating and acting with the party taking the property, he would be guilty as a principal; and if under such circumstances he seeks immunity by means of a bill of sale as evidence of a purchase by him, then indeed it would not only be right but highly proper for the court to submit the question of the *bona fides* of the purchase or bill of sale, so that the jury might ascertain and find whether or not such pretended purchase or bill of sale was a sham or device to cover up and avoid the crime of theft. (Clark's Crim. L., p. 262, and note; *Prator* v. *The State*, 15 Texas Ct. App., 363; *Roberts* v. *The State*, 17 Texas Ct. App., 82.) The instruction given did not properly present the question of good faith.

As to the other objection to the charge, it is not likely to arise on another trial, inasmuch as John Phillips, one of the defendants, and the one involved in the supposed error, has been acquitted on this trial.

For the errors discussed, the judgment is reversed and the cause is remanded for another trial.

*Reversed and remanded.*

[Opinion delivered October 28, 1885.]